# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

SEAN DUNCAN SELLARS,
    *Plaintiff*,

v.                                             No. 3:17-cv-00706 (JAM)

SCOTT SEMPLE, *et al*.
    *Defendants*.

## INITIAL REVIEW ORDER DISMISSING COMPLAINT
## WITHOUT PREJUDICE TO RE-FILING OF PROPER COMPLAINT(S)

      Plaintiff Sean Duncan Sellars is a former prisoner of the Connecticut Department of Correction. He has filed a 59-page civil rights complaint against some 24 defendants who he believes wronged him during the course of several years while he was incarcerated, residing at several halfway houses, or on parole. For several reasons, I will dismiss the complaint with leave to file an amended complaint (or more than one amended complaint to the extent that plaintiff wishes to file a complaint against defendants who cannot be properly joined in one action).

      First, insofar as the complaint alleges wrongful acts that occurred more than three years prior to his filing of the complaint, I conclude that these allegations are barred by the statute of limitations. Second, insofar as the complaint alleges claims against parole board members for actions taken in their official capacity, I will dismiss these claims with prejudice on the ground of absolute immunity. Third, insofar as the complaint alleges claims against supervisory prison or program officials who were not personally involved in any wrongful acts against plaintiff, these claims are dismissed without prejudice to re-filing claims against these supervisory defendants in the event that such facts showing their personal involvement can be alleged.

As to those claims that are not time-barred by the statute of limitations or the doctrine of absolute immunity, the complaint contains an extraordinary level of factual detail that defies even the most generous interpretation of the requirements of Rule 8 of the Federal Rules of Civil Procedure that a complaint contain no more than a short and simple statement of the facts that give rise to plausible grounds for relief. Moreover, because the complaint joins many different claims against many different defendants and despite the fact that many of the claims are not factually related to one another, plaintiff must proceed in compliance with Rule 20 of the Federal Rules of Civil Procedure by filing one or more separate lawsuits against each defendant or group of defendants for whom plaintiff's claims are factually related. Because of these concerns under Rule 8 and Rule 20, if plaintiff wishes to proceed, he must first file an amended complaint or amended complaints that set forth a reasonably concise statement of the facts that give rise to any claims for relief and that join as defendants to each lawsuit only those defendants as to whom plaintiff's claims are factually related to another defendant.

Accordingly, I will dismiss the complaint with prejudice as to those claims that are time-barred by the statute of limitations and as to those claims that are barred by absolute immunity. I will otherwise dismiss the complaint *without prejudice* to plaintiff's filing by **November 30, 2017**, of any amended complaint (or complaints) in compliance with Rule 8 and Rule 20 of the Federal Rules of Civil Procedure.

## BACKGROUND

Plaintiff is proceeding *in forma pauperis* and has named 24 defendants. Although several of the defendants are identified as John Doe or Jane Doe, the complaint identifies the following defendants by name:

- Scott Semple, Commissioner of the Department of Correction
- Carleton Giles, Chairperson of the Board of Pardons and Paroles
- Joy Chance, Board Member of the Board of Pardons and Paroles
- Patricia Camp, Board Member of the Board of Pardons and Paroles
- David May, Board Member of the Board of Pardons and Paroles
- Joseph Haggan, Director, Parole and Community Services
- P.O. Williams, Parole Officer of Parole and Community Services
- P.O. Pawlich, Parole Officer of Parole and Community Services
- P.O. Howlett, Parole Officer of Parole and Community Services
- P.O. Gibbons, Parole Officer of Parole and Community Services
- Jason Bedard, Parole Manager, Resident Services Unit, Parole and Community Services
- David Ruth, Owner, Sober Solutions, LLC
- Eric Desmarais, Manager, Sober Solutions, LLC
- Robert D. Pigeon, CEO, Community Solutions, Inc.
- Lisa DeMatteis-Lepore, CEO, The Connection, Inc.
- Gail Eureka, Director, The Connection, Inc.
- Tamara Jackson, Assistant Director, The Connection, Inc.
- Patrick Fallon, Director of Community Justice Services

The complaint spans nearly five years of plaintiff's journey through many facilities and programs of the state criminal justice system. The facts begin with the sentencing of plaintiff by a state court judge in October 2012 to a three-year term of imprisonment followed by three years of special parole. On September 13, 2013, Department of Correction officials released plaintiff to the custody of Parole and Community Services prior to the completion of his term of imprisonment. Parole and Community Services placed plaintiff in a community halfway house called Sober Solutions, Inc. in East Hartford, Connecticut.

*Sober Solutions*

Plaintiff repeatedly complained about unsanitary conditions and rampant usage of narcotics at Sober Solutions, even by some of their own staff. Plaintiff's complaints about the living situation to defendant David Ruth, the owner of Sober Solutions, engendered some hostility between them. On November 11, 2013, an organization called Access to Recovery

3

denied plaintiff's request for a rent subsidy. Subsequently, Ruth discussed plaintiff's rent situation with plaintiff's parole officer, defendant (John Doe) P.O. Williams (listed as Defendant #7).

After this conversation, Ruth posted a new contract on plaintiff's door on November 18, 2013, demanding an increase in rent. Plaintiff refused to pay the extra money. On December 10, defendant Ruth apparently tried to intimidate plaintiff into voluntarily evicting himself: Ruth appeared at plaintiff's door, armed with a pistol and accompanied by an allegedly gang-affiliated body guard, and demanded plaintiff leave.

Meanwhile, conditions continued to deteriorate at Sober Solutions: plaintiff's bed had collapsed and his shower broke. Despite notifying staff and his parole officer, P.O. Williams, about these worsening conditions, they went unaddressed. P.O. Williams warned plaintiff to "watch his step," because Ruth "had pull in upper management."

On the evening of January 24, 2014, an incident occurred involving Ruth, his "bodyguard," and plaintiff. Ruth confronted plaintiff while making dinner, demanding that plaintiff give a specific date when he would leave. Plaintiff refused, and Ruth called the police. When the police arrived, they took no action, informing Ruth that this was a matter for the housing courts. On January 26, P.O. Williams met with plaintiff. In their conversation, Williams relayed to plaintiff that Ruth had called him and asked him to get "rid of [plaintiff]." Williams allegedly reiterated to Ruth that this was not the parole board's place to get involved.

The next day, January 27, 2014, P.O. Williams called plaintiff back into his office, whereupon he informed plaintiff that Ruth had evicted him from the facility. According to P.O. Williams, Ruth spoke with P.O. Williams's supervisor, defendant John Doe, after speaking with

4

P.O. Williams. It is implied that this conversation between Ruth and the supervisor somehow sanctioned or effected plaintiff's eviction. Sober Solutions refused plaintiff reentry upon returning from this visit and disposed of plaintiff's belongings, including his birth certificate, clothing, a Social Security card, electronics, and pictures of his wife and photos of their wedding.

### *Hartford Correctional Center and Carl Robinson CI*

On January 28, 2014, plaintiff went to Danbury to live on the streets or get a bed in a homeless shelter. Plaintiff kept his parole office informed about his living situation in Danbury. Plaintiff's parole officer issued a warrant for plaintiff's arrest because he could not permit plaintiff to live on the streets. A Danbury police officer arrested plaintiff on February 10, 2014, and plaintiff's parole officer transported him to Hartford Correctional Center.

On February 20, 2014, prison officials at Hartford Correctional Center transferred plaintiff to Carl Robinson Correctional Institution to complete a drug and alcohol program. Plaintiff was confused by this, insisting he had been sober since 2012 and that every urinalysis was clean. Defendant Jane Doe, the clinician who had read his report, allegedly said plaintiff must have "really pissed someone off." Plaintiff later learned this transfer was on the basis of fabricated documents that falsely reported him using alcohol and cocaine.

On April 4, 2014, prison officials at Carl Robinson transferred plaintiff to another 30-day residential alcohol program in Brooklyn, Connecticut. When plaintiff asked why he was subjected to another alcohol treatment program, the director replied that it was likely a stop-gap measure until a spot in a half-way house opened up.

5

*Watkinson House*

On May 9, 2014, prison officials released plaintiff to a halfway house called Community Solutions, Inc. – Watkinson House (CSI) in Hartford, Connecticut. Plaintiff describes a despicable living arrangement, where plaintiff and six other men were stuffed into a small room infested with bed bugs and rodents. He threatened to call the Department of Public Health numerous times and complained to the Director of CSI at Watkinson, defendant John Doe (listed as Defendant #17), who allegedly reacted with malign indifference. The director allegedly further decided to restrict plaintiff's freedom of movement to leave the facility to find work, while threatening him with jail time if plaintiff did not have a job. Five days later, on May 14, 2014, a liaison from the parole office, Jane Doe (potentially referring to Defendant #13), met with plaintiff and hinted that he should stop threatening to complain to the Department of Public Health or he might incur further retaliation.

Around this time, CSI began sending plaintiff offsite to Community Renewal Team (CRT) for additional urine testing. On June 19, 2014, an incident occurred where plaintiff was asked to submit a urine sample just after returning from completing a urine sample at CRT. He attempted to comply, but was physically unable. CSI staff refused to give him water or allow him to leave the room. They threatened to call his parole officer and re-incarcerate plaintiff if he did not urinate within an hour. Eventually, plaintiff left the room and prepared his things to return to jail.

The next day, parole officers P.O. Williams and defendant Jane Doe (possibly referring to Defendant #12, #13, or #14) met with plaintiff in the director's office at CSI. An argument ensued over plaintiff's cooperativeness regarding the urine samples, although some of the

director's and parole officers' alleged statements suggest plaintiff's whistle-blowing about the deleterious living conditions constituted the underlying motivations of the dispute. Ultimately, the defendant parole officers arrested him on the grounds of violating a condition of his parole and transferred him back to Hartford Correctional Center.

From June 20, 2014, through July 9, 2014, plaintiff was housed at Hartford Correctional Center. He claims that, on July 9, 2014, he discharged his definite three-year sentence to his three-year term of special parole.

*Cheyney House*

The parole office next sent him to Community Solutions Inc. – Cheyney House in Hartford, Connecticut (Cheyney House). On July 14, 2014, defendant P.O. Pawlich visited plaintiff and explained that plaintiff was sent to Cheyney House—rather than being released—due to his reputation, beginning with his complaints at Sober Solutions, so his Special Parole sentence would be conducted in a more secure environment. According to plaintiff's allegations, Cheyney House severely restricted his freedom of movement and denied him visits from family or friends for the ensuing months. It appears plaintiff would routinely dispute CSI's curtailments of his liberties with P.O. Pawlich as stretching beyond the conditions of his parole.

During his stay at Cheyney House, employees at the facility as well as his parole officer and his parole officer's supervisor denied him the opportunity to receive medical treatment for a serious liver condition that was originally diagnosed in 2011. They conditioned his freedom to see a private doctor on some sort of release, which plaintiff refused to sign.

Plaintiff also notes that the living conditions were equally abysmal at Cheyney as they were at Watkinson: the building sweltered in August with a lack of air conditioning and was

infested with bed bugs, roaches, and rodents. Plaintiff left an anonymous tip with the Department of Public Health, which subsequently investigated. Defendant Director of CSI at Cheyney, John Doe (Defendant #18), and defendant Assistant Director of CSI at Cheyney, Jane Doe (Defendant #19), subsequently threatened plaintiff that there would be consequences for his tip-off.

Around this time, plaintiff also began filing complaints about CSI to the Social Security fraud departments. In response, P.O. Pawlich threatened him that continuing to complain would result in more jail time.

### *Revocation of Parole and the Community Partners in Action Program*

Shortly thereafter, on September 29, 2014, parole officials transferred plaintiff to the Reach Alternative Program. On December 7, 2014, officers arrested plaintiff for breach of peace. On April 15, 2015, the charges were dismissed. On May 12, 2015, plaintiff participated in a parole revocation hearing before defendants Joy Chance, David May, and Patricia Camp. Though his charges were dismissed, the Board of Pardons and Paroles found plaintiff guilty of violating the conditions of parole and sentenced him to a nine-month term of imprisonment, a three-month term in a work release program, and completion of an anger management program.

On September 8, 2015, Department of Correction officials released plaintiff to the custody of the Board of Pardons and Paroles. The Board placed plaintiff in a work release facility, Community Partners in Action, in Hartford, Connecticut. Plaintiff was not able to seek treatment for his medical needs and could not be in contact with friends or family who were not on his visiting list. Parole and Community Services and plaintiff's parole officer required him to attend an anger management program. Plaintiff's participation in the program required him to miss one day a week of work. His parole officer refused to permit him to stop attending the

program even after a licensed clinician at CRT indicated that the program would not be beneficial to plaintiff.

*Hospitalization and Another Revocation of Parole*

On December 1, 2015, a car side-swiped plaintiff as he walked down the street in Hartford, Connecticut. Plaintiff suffered injuries requiring that he be treated in a hospital. During the examination of plaintiff, hospital personnel became aware that plaintiff had started drinking alcohol again and this relapse had caused his pre-existing liver condition to deteriorate. Thus, on December 5, 2015, hospital personnel transferred plaintiff to another hospital in Connecticut to begin a detoxification program.

On December 9, 2015, plaintiff's parole officers including P.O. Howlett, P.O. Pawlich, and Supervisor P.O. Jason Bedard interrupted his treatment and picked him up from the hospital and transferred him back to Hartford Correctional Center. The following day, plaintiff's parole officers served him with paperwork charging him with violating the terms of his parole for allegedly "snitching on [parole officers]." A parole revocation hearing was held on February 2, 2016. The Board of Pardons and Paroles found that plaintiff had violated his parole conditions and sentenced him to a nine-month term of imprisonment.

On September 9, 2016, correctional officials re-paroled plaintiff to a term of special parole. Plaintiff's parole officer committed him to a residential treatment program as a condition of special parole. Plaintiff completed the program on October 10, 2016.

*Roger Sherman House*

On October 10, 2016, plaintiff's parole officer transferred him to a Department of Correction work release facility, Roger Sherman House, in New Haven, Connecticut. Plaintiff

had multiple disputes with the staff at Roger Sherman House regarding the nutritional content of the food served at the facility and his transportation to court for various hearings. He sought to be transferred to another facility in Hartford, which would have been closer to his family and a potential job. His parole officer denied the request for a transfer.

When plaintiff complained about being denied access to the courts, staff at Roger Sherman House moved him to another room at the facility. When he complained about the food and his nutritional requirements, he was transferred to another room in the facility and told he would be sent back to jail if he did not comply and move to another room.

In February 2017, plaintiff sought to attend a number of events held at Yale University pertaining to a campaign against torture. His parole officer and counselor permitted him to attend two events, but then denied his request to attend additional events. Staff at Sherman House continued to throw away food he claimed his doctor had instructed him to eat. In March 2017, a staff member at Roger Sherman House searched his room.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any case brought *in forma pauperis* at any time if it determines that the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." *Id.* The allegations of a *pro se* plaintiff's complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of federal court complaints. A complaint must allege

enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g., Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### *Statute of Limitations*

A civil rights claim pursuant to 42 U.S.C. § 1983 is subject to a three-year statute of limitations. *See Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994). Although the statute of limitations is ordinarily an affirmative defense, a court may "dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitation defense are set forth in the papers plaintiff himself submitted." *Walters v. Industrial and Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) (internal quotations omitted).

Plaintiff filed his complaint on April 27, 2017. It follows that all of plaintiff's allegations concerning discrete, wrongful acts by one or more defendants that occurred prior to April 27, 2014, are barred by the statute of limitations. This includes plaintiff's allegations regarding his release to Sober Solutions, Inc. on September 13, 2013, his subsequent eviction from that facility by owner David Ruth and manager Eric Desmarais on January 27, 2014, his arrest by Parole Officer Williams on February 10, 2014, his confinement at Carl Robinson Correctional Institution from February to April 4, 2014, and his confinement at the program in Brooklyn from April 4, 2014 to April 27, 2014, all as detailed in the first 28 paragraphs of the complaint. Accordingly, the following defendants are dismissed from this action: David Ruth and Eric Desmarais. Additionally, all claims against defendant P.O. Williams for events prior to April 27,

2014, are dismissed as well.

### *Claims Against Parole Board Members*

The complaint names as defendants three members of the Board of Pardons and Paroles who conducted plaintiff's violation hearing on February 2, 2016. Parole board members have absolute immunity when performing the quasi-judicial role of presiding over violation hearings. *See Montero v. Travis*, 171 F.3d 757, 760–61 (2d Cir. 1999). Accordingly, the following defendants are dismissed from this action: Joy Chance, Patricia Camp, and David May.

### *Claims Against Supervisory Officials*

The complaint names several defendants who are senior supervisory personnel but without alleging facts to show that these supervisory personnel were personally involved in any of the alleged wrongdoing by lower-level employees.[1] "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013); *see also Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014) (noting that "liability for supervisory government officials cannot be premised on a theory of *respondeat superior* because § 1983 requires individual, personalized liability on the part of each government defendant"). Moreover, conclusory, non-specific allegations of misconduct or gross negligence are insufficient to establish liability of supervisory prison officials under § 1983. *See Parris v. New York State Dep't of Correctional Servs.*, 947 F.

---

[1] The only mention of some of these supervisory defendants by name in the complaint occurs on page 48, where plaintiff states that he "called and notified" numerous senior officials in the Connecticut criminal justice system about his grievance against Roger Sherman House. Plaintiff does not allege that any of these officials took or failed to take any particular actions in response to his calls, and therefore has failed to state any viable claim against these defendants.

Supp. 2d 354, 364 (S.D.N.Y. 2013). Accordingly, the Court will dismiss plaintiff's claims against defendant Scott Semple, Joseph Hagan, Lisa DeMatteis-Lepore, Carlton J. Giles, and Robert D. Pigeon without prejudice to re-pleading if plaintiff is able to allege facts to show that any of these supervisory personnel were personally involved with any deprivation of his rights.

### *Filing of Amended Complaint to Comply with Rule 8 and Rule 20*

The complaint runs 59-single-space pages and is inordinately long and detailed. The allegations are essentially a blow-by-blow recounting by plaintiff of his many interactions over many years with many defendants and others. The level of detail far exceeds what is necessary to show that plaintiff is entitled to relief against any particular defendant. Rule 8 of the Federal Rules of Civil Procedure requires that that a complaint "must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2), and "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

The point of Rule 8 is to relieve the Court and defendants alike of the "unjustified burden" of having "to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). In *Salahuddin*, the Second Circuit concluded that a prisoner's 15-page single-spaced complaint against 20-odd defendants did not comply with Rule 8 and that the district court had discretion to dismiss the complaint to require plaintiff to file an amended complaint. *Ibid.* Just as in *Salahuddin*, plaintiff's complaint here does not comply with the requirements of Rule 8.

In addition, it is readily apparent that the complaint also fails to comply with the limits on permissive joinder of claims against multiple defendants under Rule 20(a)(2). Joinder of claims against multiple defendants is permitted by this Rule if two criteria are met: (1) the claims

"aris[e] out of the same transaction, occurrence, or series of transactions and occurrences," and (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

Here, the complaint amounts to a running monologue of all the wrongs that plaintiff believes have occurred during his several-years' journey through many different facilities and programs. At each stop along the way there are different officials who plaintiff believes mistreated him, and there is little indication that any one defendant's misconduct was ongoing. It is clear that there are no common questions of law or fact that tie all these alleged wrongs against all of the defendants together.

In such circumstances, a plaintiff is required to file separate lawsuits against each defendant or against each group of defendants who acted in concert with one another or as to whom plaintiff's claims are logically connected to one another. *See, e.g., Melvin v. Connecticut,* 2016 WL 3264155, at *2 (D. Conn. 2016); *see also Webb v. Maldonaldo*, 2013 WL 3243135, at *2-3 (D. Conn. 2013) (prisoner plaintiff's Eighth Amendment claim of excessive force against some defendants not properly joined with plaintiff's First Amendment claim against other defendants relating to possession of sexually explicit materials).

In order for plaintiff's claims to proceed as to those defendants who engaged in misconduct against plaintiff after April 27, 2014, I will require plaintiff to file *separate* complaints that comply with the joinder requirements of the Federal Rules of Civil Procedure. Any of these complaints may include more than one defendant but for each separate complaint plaintiff should limit the complaint to naming only those defendants as to whom there is a link between plaintiff's claims against another defendant.

For example, if plaintiff was subject to similar mistreatment at one particular facility involving defendants who worked together to engage in mistreatment, then it would be appropriate for plaintiff to join those defendants in a single complaint. By contrast, if plaintiff seeks to sue multiple defendants from different facilities who did not work with one another and who engaged in separate acts of misconduct against plaintiff, then plaintiff should file separate complaints against these defendants rather than joining them together in a single complaint. In short, each complaint that names more than one defendant should be limited to naming only those defendants for whom there is a factual or logical connection between these defendants and plaintiff's claims against them.

### *Claims Against "John Doe" Defendants*

Plaintiff's claims against unnamed "John Doe" and "Jane Doe" defendants are permissible at this time as placeholders for purposes of notice of the scope of plaintiff's claim and for conducting discovery in this action. *See, e.g.*, *Abreu v. City of New York*, 657 F. Supp. 2d 357, 362–63 (E.D.N.Y. 2009). Plaintiff is cautioned, however, that he cannot ultimately obtain monetary relief against unnamed "John Doe" or "Jane Doe" defendants, and he must diligently take steps to learn the real names and identities of the "John Doe" and "Jane Doe" defendants and to amend his pleadings to identify by name any person whom he seeks to hold liable for money damages. *See, e.g.*, *Hogan v. Fischer*, 738 F.3d 509, 517–20 (2d Cir. 2013).

Because the Court cannot serve process on any of the defendants so long as they have not been identified by name, plaintiff's amended complaint shall identify by name any of the "John Doe" or "Jane Doe" defendants whom he seeks to hold liable. If plaintiff is unable to identify all or any of the "John Doe" or "Jane Doe" defendants by name within the allotted time

period, then he shall file a motion for extension of time that describes in detail the efforts he has made to learn the names of these defendants. Failure to file a timely amended complaint or motion for additional extension of time may result in the dismissal of this action against any of the "John Doe" or "Jane Doe" defendants.

## CONCLUSION

The Court enters the following orders:

(1)  The following claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B): all claims against defendants Semple, Giles, Chance, Camp, May, Hagan, Ruth, Desmarais, Pigeon, and DeMatteis-Lepore, and all claims against defendant Williams arising from events prior to April 27, 2014.

(2)  The remainder of the complaint that involves allegations that are not time-barred is dismissed without prejudice for failure to comply with Rule 8 and its requirement of a short and plain statement of the facts and grounds for relief.

(3)  On or before **November 30, 2017**, plaintiff may file an amended complaint (or more than one complaint) that complies with Rules 8 and 20 of the Federal Rules of Civil Procedure. If plaintiff does not file an amended complaint (or amended complaints) by that date, the Court intends to dismiss this case.

(4)  Any amended complaint should identify by name all "John Doe" or "Jane Doe" defendants whom plaintiff seeks to hold liable, or, if plaintiff has been unable to discover the identities of these defendants, he shall file a motion for extension of time that describes in detail the efforts he has made to learn the names of these defendants along with his amended complaint.

(5) Plaintiff is advised that any amended complaint will completely replace his original complaint, and therefore he must include all factual allegations he wishes to pursue in any amended complaints that he may file, even if these facts were already set forth in his original complaint. Failure to do so may result in the dismissal of any claims not included in the amended complaint. If plaintiff has any questions about how to file his amended complaint, he may contact chambers at (203) 773-2105 and to request to speak with the law clerk for this case.

It is so ordered.

Dated at New Haven this 20th day of October, 2017.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge